UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | **REDACTED** |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:19-cr-00687-SRC-2 |
| ) | |
| BURTON HUGHES, ) | |
| ) | |
| Defendant. ) | |

**Memorandum and Order**

Having admitted to a felony firearms offense, Burton Hughes asks the Court to exercise its core Article III power and reduce—by several years—his 72-month sentence. Hughes seeks to file a supplemental motion for compassionate release highlighting his health problems, ▬▬▬▬▬▬▬▬▬▬▬▬, as one of several reasons to grant the motion. However, Hughes relates through counsel that, should his ▬▬▬▬▬▬▬▬ [health problem] become publicly known, he fears he could face threats and violence while serving his sentence. So, after fits and starts, Hughes moves to file that supplemental motion under seal, asking the Court to hide from public view the medical information which provides the principal basis for Hughes's motion for compassionate release.

**I.    Background**

After Burton Hughes pleaded guilty to a firearms offense, the Court sentenced him to a 72-month term of imprisonment. Docs. 2, 93, 117. About nine months later, Hughes filed a pro se motion for relief under 18 U.S.C. § 3582(c)(1)(A)(i) requesting the Court to "refer his case to the federal public defender office for a medical screening for compassionate release/reduction in sentence . . ., or home confinement under Cares Act." Doc. 137 at p. 1. The Federal Public

Defender's Office then sought to supplement Hughes's pro se motion under seal.  Docs. 148, 149, 150.  The Court denied this first motion for leave to file under seal because the motion stated "no legal basis for sealing," relied heavily on the mere consent of the United States to the motion, and failed to propose "limited-and-targeted redactions," all in violation of Local Rule 13.05.  Doc. 151.  Hughes then took a second attempt at sealing in an amended motion for leave.  Doc. 154.  The Court denied the motion in relevant part, ruling that Hughes once again failed to identify a legal basis for sealing his medical information.  Doc. 159.  Now Hughes tries for a third time to seal the supplemental motion's references to Hughes's ▮▮▮▮ [health problem].  Doc. 163.

The Court notes that in his second amended motion, Hughes seeks to seal information about his other medical problems including chronic viral hepatitis C and substance-use disorder.  At the hearing on Hughes's motion, however, Hughes narrowed the scope of his sealing request, indicating that he would accept a ruling addressing only sealing of his ▮▮▮▮ [health problem] because he believes only that information imperils his safety.  For that reason, in this order the Court discusses sealing only of Hughes's ▮▮▮▮ [health problem].

In this second amended motion for leave to file under seal, Hughes contends his ▮▮▮▮ [health problem] must remain secret because "[i]f his health information is filed unsealed, Mr. Hughes is practically certain ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ he will be threatened with serious physical injury or death."  Doc. 164 at p. 1.  Hughes says that "[p]risoners often direct family members or surrogates to research the court cases of other inmates to learn whether they are informants . . . 'for purposes of inmate intimidation or harm,'" that he "personally knows of several prisoners who monitor the court cases of other residents in his housing unit," and that he "is certain that if his ▮▮▮▮ [health

2

problem] is revealed in court filings, everyone in his housing unit will know right away." *Id.* at p. 2.

If his fellow prisoners find out about his diagnosis, Hughes "expects he will then be told to 'check in.'" *Id.* According to Hughes, "the prisoner who hears he must 'check in' must either check himself into Protective Custody . . . or he will be physically attacked or killed." *Id.* Protective custody entails "the punitive conditions of the Administrative Segregation Unit" where prisoners have no access to rehabilitative programming, education, or other creature comforts. *Id.* at p. 3. For example, "Hughes knows one prisoner who was told to 'check in' immediately after he was diagnosed with a staph infection." *Id.* at p. 2. Moreover, Hughes believes that "he should expect to be transferred to another facility after 45 to 50 days because—in [his] experience—BOP will not keep a prisoner in [protective custody] for longer than 45 days for safety reasons." Hughes says all of these things happen frequently ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* Consequently, says Hughes, if he "files his supplemental motion for reduction in sentence unsealed, he will either face an imminent physical attack or face serving the rest of his sentence in [protective custody]." *Id.* at p. 3.

Hughes also submits unattested medical records confirming his ▮▮▮▮▮▮▮ [health problem], Doc. 164-2, as well as a judicially noticeable memorandum from the Administrative Office of the United States Courts restricting the public disclosure of statements of reasons for sentences due to concerns for the safety of prisoners, Doc. 164-5. The Court takes judicial notice of the memorandum. And finally, shortly before the hearing on his motion, Hughes filed a handwritten, unsworn letter in which he echoes many of the facts set out by his attorney, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Doc. 189.

Because the United States consented to each of Hughes's sealing motions without giving any legal or factual basis for doing so, Doc. 163 at p. 3, the Court appointed Eugene Volokh as amicus curiae to represent the public interest and present arguments on Hughes's second amended motion. Doc. 170. After appointing Volokh, the Court accepted additional briefing and heard argument on Hughes's motion. Docs. 174, 177, 185, 186, 189, 191.

**II.     Standard**

A "common-law right of access to judicial records" exists. *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013). When evaluating motions to seal, the "court must first decide if the documents in question are 'judicial records,' and if so, must next consider whether the party seeking to prevent disclosure has overcome the common-law right of access." *Flynt v. Lombardi*, 885 F.3d 508, 511 (8th Cir. 2018) (quoting *IDT Corp.*, 709 F.3d at 1222–23). "The presumption of public access to judicial records may be overcome if the party seeking to keep the records under seal provides compelling reasons for doing so." *Flynt*, 885 F.3d at 511 (citing *In re Neal*, 461 F.3d 1048, 1053 (8th Cir. 2006)). "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and [the] resultant value of such information to those monitoring the federal courts." *IDT Corp.*, 709 F.3d at 1224 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)). In particular, documents the Court considers in sentencing "[are] entitled to a strong presumption of access" because they assist the Court's exercise of core Article III power. Order at 14, *United States v. Hamm*, No. 4:19-cr-00613 (E.D. Mo. Feb. 17, 2021).

Besides the common-law right of access to courts, "the press and general public" have a qualified First Amendment right of access to certain judicial proceedings and documents as well. *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 603 (1982); *see also Zink*

4

*v. Lombardi*, 783 F.3d 1089, 1112 (8th Cir. 2015). This First Amendment right of access extends to preliminary hearings, criminal trials, voir dire, documents filed in support of search warrant applications, as well as sentencings and documents filed regarding sentencing. *Press-Enter. Co. v. Superior Ct. of California for Riverside Cnty.*, 478 U.S. 1, 10 (1986); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 579–80 (1980); *Press-Enter. Co. v. Superior Ct. of California, Riverside Cnty.*, 464 U.S. 501, 505–11 (1984); *In re Search Warrant for Secretarial Area Outside Off. of Gunn*, 855 F.2d 569, 572–73 (8th Cir. 1988); Order at 13, *United States v. Hamm*, No. 4:19-cr-00613 (E.D. Mo. Feb. 17, 2021); *see also Zink*, 783 F.3d at 1112. To overcome the public's First Amendment right of access, the "party seeking closure or sealing must show that such a restriction of the first amendment right of public access is necessitated by a compelling government interest." *Gunn*, 855 F.2d at 574. And even then "documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to that interest." *Id.* (internal citations and quotation marks omitted).

**III.    Analysis**

    **A.    Absence of evidence**

As set out above, the Court must make certain findings when determining whether to allow a party to file documents under seal. To make these findings, the Court requires evidence. Now on his third sealing motion, Hughes provides the Court no evidence—no testimony, no declarations, no affidavits. Instead, the Court has before it the ipse dixit of counsel relaying Hughes's fears, as well as an unsworn letter from Hughes describing much of what counsel has told the Court already. Counsel also provides unverified medical records, as well as judicially noticeable government documents, but no more. Despite all this, because no party objects to

Hughes's failure to submit evidence, the Court considers the materials submitted by Hughes for what they're worth. Counsel should follow the better practice of submitting admissible evidence, as appropriate, with a motion for leave to file under seal. Because the Court decides such motions "in light of the relevant facts and circumstances of the particular case," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978), lack of admissible evidence alone can be a basis for denial. *See United States v. Sajous*, 749 F. App'x 943, 945 (11th Cir. 2018) ("Without some evidence that sealing the records of Sajous's sentencing proceedings was necessary. . . , Sajous could not overcome the presumption in favor of allowing the public access to his records."); *United States v. Gordon*, No. CR 08-00467 SBA, 2009 WL 702796, at *2 (N.D. Cal. Mar. 17, 2009) ("[T]he Government has presented no evidence to support its conclusion . . . and the motion is denied for lack of factual and legal support.").

      **B.**       **Common-law right of access**

No party disputes that Hughes's supplemental motion would constitute a "judicial record" to which the public's common-law right of access attaches. *See IDT Corp.*, 709 F.3d at 1222–23. Thus, to determine whether Hughes overcomes the common-law right of access, the Court must resolve whether Hughes presents the Court with a "compelling reason" for sealing, *Flynt*, 885 F.3d at 511, paying special attention to "the role of the material at issue in the exercise of Article III judicial power and [the] resultant value of such information to those monitoring the federal courts." *IDT Corp.*, 709 F.3d at 1224.

As the Court explained in *United States v. Hamm*, sentencing documents "directly see[k] to influence the sentence that this Court imposes," and the public enjoys "a strong presumption of access" to such documents because of their "direct role 'in the exercise of Article III judicial power.'" Order at 14, *United States v. Hamm*, 4:19-cr-00613 (E.D. Mo. Feb. 17, 2021) (quoting

6

*IDT Corp.*, 709 F.3d at 1224). In this case, Hughes wishes to file his supplemental motion for compassionate release under seal. And compassionate-release motions require the Court to determine, considering the factors set forth in 18 U.S.C. § 3553(a), whether "extraordinary and compelling reasons warrant" a reduction in sentence. 18 U.S.C. § 3582(c). Because the supplemental motion for compassionate release "directly seeks to influence the sentence that this Court [has] impose[d]," the logic of *Hamm* applies equally here and the document "is entitled to a strong presumption of access." Order at 14, *United States v. Hamm*, 4:19-cr-00613 (E.D. Mo. Feb. 17, 2021).

  Hughes fails to demonstrate a compelling reason overcoming this strong presumption. Hughes says, absent sealing, he faces a choice between serious injury (or death) and spending the remainder of his sentence in protective custody. Yet Hughes provides the Court no allegations that he has faced personal threats, that anyone monitors his court cases, or that he has witnessed a fellow inmate with a ▇▇▇▇ [health problem] be beaten or killed. Instead, Hughes articulates a nonspecific concern that a fellow inmate *might* find out about his ▇▇▇▇ ▇▇ [health problem], which *might* result in him being told to "check-in," and for which refusal to do so *might* lead to an attack, all based on nothing more than an observation that Hughes once witnessed a fellow inmate have to "check-in" because of a staph infection. If the Court accepted Hughes's argument, such sanction would lead to allowing any inmate raising any nonspecific security concern to file materials shielded from public view. The Court also finds Hughes's fear of spending the remainder of his sentence in protective custody not credible because, as of June 2022, only seven of the 139,506 inmates in the BOP have been in protective custody for more than thirty days. Federal Bureau of Prisons, *Restricted Housing* (as visited June 9, 2022, and available in the Court's case file), https://www.bop.gov/about/statistics/statistics_inmate_shu.jsp.

7

While "safety concerns can justify sealing in certain occasions," Hughes "fails to raise his generalized safety concerns from a level of speculation to the level of compelling reasons supporting sealing." *United States v. Hamm*, No. 4:19-cr-00613 SRC, 2021 WL 1561913, at *4 (E.D. Mo. Apr. 21, 2021).

Hughes likewise gives the Court no reason to doubt that the Bureau of Prisons can ensure the safety of prisoners entrusted to its custody. The parties bring to the Court's attention no BOP policy, regulation, or other statement concerning inmates' submission of potentially sensitive documents to the Court. Hughes cites only a BOP regulation prohibiting inmates from retaining ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ while incarcerated, as well as a nonpublic, BOP document apparently obtained by a Freedom of Information Act request and cited in ▓▓▓▓▓▓▓ filed in the Supreme Court stating that ▓▓▓▓▓▓▓▓▓▓▓▓ any document discussing ▓▓ ▓▓▓▓▓ could raise substantial ▓▓▓▓▓▓▓▓▓ Doc. 174 at p. 2 (▓▓▓▓▓▓▓▓ ▓▓▓▓ and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓). But if inmate litigation concerning ▓▓▓▓▓▓ [health problems] presented the risk to prisoner and institutional safety that Hughes claims it does, the Court would expect the BOP to take a position on the matter. Despite repeated opportunities, the BOP and its parent agency the Department of Justice, *see* 18 U.S.C. § 4042, which represents the United States in this case, have taken a proverbial knee on Hughes's sealing motions—the BOP simply has not weighed in, *sotto voce* or otherwise. Without evidence that Hughes faces a specific threat to life or limb absent sealing, the Court simply cannot conclude the Bureau of Prisons lacks the ability to ensure Hughes's safety. As amicus curiae puts it, "the BOP's role is to stop prison violence; this Court's role is to adjudicate cases in a way that the public can . . . monitor." Doc. 186 at p. 7.

Further, the federal courts routinely and publicly discuss inmates' [health problems] ▮ ▮ in the compassionate-release context. *See, e.g.*, *United States v.* ▮ (M.D. Fla. ▮); *United States v.* ▮ (S.D. Ga. ▮); *United States v.* ▮ (D.N.J. ▮); *United States v.* ▮ (E.D. Pa. ▮); *United States v.* ▮ (E.D. Ky. ▮), *appeal dismissed*, ▮ (6th Cir. ▮); *United States v.* ▮ (E.D. Mich. ▮); *United States v.* ▮ (S.D. Miss. ▮).

The parties bring to the Court's attention only one case in which a court sealed a prisoner's ▮ [health problem] in the compassionate-release context, Order, *United States v.* ▮. The Court finds ▮ [that case] unpersuasive, though, because that court retroactively sealed its opinion discussing ▮ ▮ [the health problem] and did so in a cursory fashion, summarily finding "that the public's right of access is outweighed" because the documents "contain confidential medical information of a sensitive and personal nature." *Id.*; Order, *United States v.* ▮. Of course, somewhere under seal case law may exist supporting Hughes's position. But that fact merely highlights the dilemma presented by shrouding court decisions in secrecy.

Hughes also believes that *United States v. Thompson*, 713 F.3d 388 (8th Cir. 2013) supports sealing his supplemental motion. In *Thompson*, the Eighth Circuit, applying the Sixth Amendment public-trial right, affirmed the district court's decision to close the courtroom during

9

a witness's testimony when that witness "expressed fear of testifying against [the defendant], an alleged gang member involved in a drive-by shooting who was implicated in other gang-related, violent activities by other witnesses." *Id.* at 396. Hughes says that he "likewise alleges fear based on a specific, identifiable, and acknowledged risk" based on his observations and the BOP's handling of ▓▓▓▓ [health problems] generally. Doc. 185 at p. 22.

The Court readily distinguishes the motion before it and the logic of *Thompson*. Partially closing Thompson's trial supported "[t]he government's interest in protecting its witness and the witness's concern for his own safety." *Thompson*, 713 F.3d at 396. Here, Hughes asserts only his personal interest and no *government* interest supporting sealing. Moreover, as discussed above, Hughes's alleged fears are not based on specific, identifiable, and acknowledged risks, but on generalized risks faced by many inmates (which the law charges the BOP with mitigating). *Thompson* demonstrates the unremarkable proposition that the law affords greater protections to non-party witnesses than to convicted felons.

*Thompson* also illustrates why the analogy Hughes made during the hearing to 5K1.1 motions does not hold. When the Court closes the courtroom to protect a non-party witness in a criminal trial who faces a specific, credible threat from the defendant, or when the Court seals information regarding a criminal defendant's cooperation with law enforcement, the seal advances a compelling government interest. The government must protect witnesses and cooperating defendants in order to promote the orderly administration of justice. *See Thompson*, 713 F.3d at 396. Hughes articulates no such interest.

In his motion, Hughes proposes redacting only the supplemental motion's references to his ▓▓▓▓ [health problem] and further suggests that the Court need only order sealing until Hughes completes his prison term. The Court rejects Hughes's insistence that this

10

"narrow" and time-limited proposal supports sealing in this case. *See* Doc. 185 at pp. 11–14. The Court properly considers proposed redactions, time-limits, and other measures to protect the public only after the Court determines the propriety of sealing in the first place. Order at 15, *United States v. Hamm*, No. 4:19-cr-00613 (E.D. Mo. Feb. 17, 2021) (citing *IDT Corp.*, 709 F.3d at 1224; *Gunn*, 855 F.2d at 574). And here, the Court determines the circumstances do not warrant sealing.

The Court likewise rejects Hughes's argument that his non-celebrity status somehow lessens the public's right of access to court records. Doc. 185 at pp. 12–16. No case the Court encountered in its consideration of this motion limits the public's right of access based on a party's non-celebrity status. While it's possible that under some circumstances a person's notoriety may counsel the Court against sealing, *see Hamm*, 2021 WL 1561913, at *6, the Court rejects the inverse proposition that mere public obscurity weighs in favor of sealing private information or somehow lessens the burden the proponent of sealing must carry.

Thus, after due consideration, the Court concludes that Hughes fails to present a compelling reason for sealing his supplemental motion. In short, Hughes fails to overcome the public's common-law right of access.

### C. First Amendment right of access

The common-law and First Amendment standards for sealing share many features. However, unlike the common-law standard that requires the Court to evaluate whether Hughes provides a "compelling reason" for sealing, under the First Amendment standard, the Court must find a "compelling *government* interest" before it permits sealing. *Gunn*, 855 F.2d at 574 (emphasis added); *Goff v. Graves*, 362 F.3d 543, 550 (8th Cir. 2004); *see also S.E.C. v. Shanahan*, No. 4:06-MC-546 CAS, 2006 WL 3330972, at *4 (E.D. Mo. Nov. 15, 2006) ("[T]he

11

respondents' interest in keeping their names out of the public record is not a governmental interest at all, but rather a private interest."). And even if the Court finds such an interest, the "documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to that interest." *Gunn*, 855 F.2d at 574.

The Court finds that Hughes fails to satisfy these requirements for all of the reasons explained in Part III.B.  The Court additionally notes that Hughes fails to even attempt to articulate a compelling *government* interest advanced by the proposed sealing of his supplemental motion.  Hughes's arguments rest on his assertion that his "safety interest"—an individual, not government, interest—outweighs the public's right of access to his supplemental motion.  Hughes came closest to articulating a compelling government interest during the hearing when asked what broader interests sealing his supplemental motion would serve.  Counsel stated that allowing sealing here would support a broader policy favoring the ability of citizens to freely petition the courts for redress.  But merely reframing Hughes's personal interest in sealing as a societal one does not a compelling government interest make.

Moreover, neither the United States Department of Justice nor the Federal Bureau of Prisons, i.e. the government itself, even so much as attempts to identify any government interest, compelling or otherwise.  The deafening silence of the government, coupled with the failure of Hughes himself to identify such an interest, leads the Court to conclude that Hughes does not present a compelling government interest supporting his motion to seal.  He thus fails to overcome the public's First Amendment right of access as well.

**IV.    Conclusion**

Thus, the Court denies Hughes's second amended [163] motion for leave to file under seal.  Pursuant to Local Rule 13.05(A)(4)(g), the Court stays and seals this Order for a period of 14 days, during which time Hughes may withdraw Doc. 164-1 if he chooses.  If Hughes does not withdraw his supplemental motion for compassionate release (or appeal this order), then the supplemental motion, this order, and the briefing and argument associated with the motions for leave to file under seal will become part of the public record and the Court will proceed to rule on the merits of Hughes's motion for compassionate release.

So Ordered this 9th day of June 2022.

_____
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE